**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**MICHAEL A. FIORILLO**                                                    **CIVIL ACTION**

**VERSUS**                                                                 **No. 08-1717**

**COLUMBIA INSURANCE COMPANY, et al**                                      **Section I/3**

## ORDER AND REASONS

Before the Court are cross motions for summary judgment filed by plaintiff, Michael A. Fiorillo ("Fiorillo") and defendant, State Farm Mutual Automobile Insurance Company ("State Farm") with respect to whether Michigan or Louisiana law should apply to plaintiff's uninsured motorist ("UM") policy issued by State Farm. For the following reasons, State Farm's motion for summary judgment is **GRANTED** and Fiorillo's motion for summary judgment is **DENIED.**

## BACKGROUND

This lawsuit arises out of an automobile accident that occurred in Louisiana on May 28, 2007 when Firorillo was driving a Harley Davidson motorcycle on the Causeway Bridge in St. Tammany Parish.[1] Fiorillo alleges that he was injured while attempting to avoid striking the rear of a slow-moving truck and the trailer that the truck was pulling.[2] The truck was owned by Dale Schmit ("Schmit") and operated by Olivas Nemecio ("Nemecio").[3] On April

---

[1]Rec. Doc. No. 1, p. 3, para. IV.

[2]*Id.*

[3]Rec. Doc. No. 33-8, pp. 1-2.

1

22, 2008, Fiorillo filed a complaint against Nemecio, Schmit,[4] Schmit's insurer, Columbia Insurance Company ("Columbia"), and Fiorillo's UM carrier, State Farm.

The undisputed facts indicate that Columbia issued an insurance policy to Schmit with bodily injury liability policy limits of $50,000 per person and $100,000 per accident[5] and State Farm issued a UM policy to Fiorillo and his wife in Michigan with policy limits of $50,000 per person and $100,000 per accident.[6] Both polices were in effect at the time of the alleged accident.

State Farm and Fiorillo have filed cross motions for summary judgment regarding whether Michigan or Louisiana law applies to the State Farm UM policy. Both parties agree that if Michigan law applies, then Fiorillo is not entitled to UM coverage because the limits of Schmit's liability coverage exceed the minimum liability coverage required by Michigan law.[7]

## LAW AND ANALYSIS

**I. STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any

---

[4]Fiorillo's complaint incorrectly refers to Dale Schmit as Dale Schmidt. Rec. Doc. No. 13.

[5]Rec. Doc. No. 24-11, para. 2; Rec. Doc. No. 33-3, para. 5.

[6]Rec. Doc. No. 24-11, para. 1; Rec. Doc. No. 33-3, para. 14; Rec. Doc. No. 24-3, p. 2.

[7]Rec. Doc. No. 24-2, p. 2; Rec. Doc. No. 33-2, p. 2, para. 4.

affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. CHOICE OF LAW ANALYSIS

Because the Court has diversity jurisdiction over this matter, the Court applies state substantive law. *Abraham v. State Farm Mutual Automobile Ins. Co.*, 465 F.3d 609, 610 (5th Cir. 2006). To determine which state law governs this dispute, the Court must apply the choice of law principles of the forum state, in this case Louisiana. *Id.*(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).

The Louisiana Supreme Court recently set forth the proper choice-of-law analysis for automobile accident cases, such as this, that involve UM insurance policies issued and delivered in states other than Louisiana.[8] *Champagne v. Ward*, 893 So. 2d 773, 777 (La. 2005). The court rejected the argument that Louisiana law automatically applies to an out-of-state UM policy merely because

---

[8]Rec. Doc. No. 39-3, para. 1; Rec. Doc. No. 33-3, para. 14.

4

the accident occurs in Louisiana and involves a Louisiana resident. *Id.* at 775, 786. Instead, the court held that if Louisiana law differs from the law of a foreign state, a determination as to the governing law must be made in accordance with the Louisiana Civil Code's choice-of-law principles. *Id.* at 787 ("[T]he appropriate starting point in a multistate case...is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified by Book IV of the Civil Code.").

### A. **Louisiana UM Law v. Tennessee UM Law**

In accordance with *Champagne,* the Court must first determine whether the UM laws of Michigan and Louisiana differ. *Abraham*, 465 F.3d at 611; *Rohr v. Allstate Ins. Co.*, No. 06-30970, 2007 WL 3120131, at *3 (5th Cir. Oct. 25, 2007); *Champagne*, 893 So. 2d at 786.

Michigan's Insurance Code provides:

> An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle should not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to a limit, exclusive of interests and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and subject to that limit for 1 person, to a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident....

5

Mich. Comp. Laws Ann. § 500.3009(1). Under Michigan law, any "motor vehicle to which there is not in force a liability policy meeting [those] requirements" is deemed an "uninsured motor vehicle." Mich. Comp. Laws Ann. § 257.1102(d); *see also Jarrell v. Detroit Auto. Inter-Ins. Exch.*, 308 N.W. 2d 198, 200 (Mich. Ct. App. 1981).[9]

On the other hand, Louisiana's UM law, which was designed "to promote full recovery for innocent tort victims," mandates that motor vehicle liability policies provide UM coverage, unless such coverage is validly rejected by the insured. La. Rev. Stat. Ann. §1295(1)(a)(i); *Champagne*, 893 So. 2d at 788; *Roger v. Estate of Moulton*, 513 So. 2d 1126, 1130-31 (La. 1987)("UM coverage will be read into the policy unless validly rejected."); *Degruise v. Houma Courier Newspaper Corp.*, 657 So. 2d 580, 586 (La. Ct. App. 1st Cir. 1995) ("UM coverage is automatic...Public policy demands and [the UM statute] dictates that UM coverage up to the policy's limit, even if even nowhere mentioned in the policy, be read into every insurance contract as if it were written on the face of the policy.").

Moreover, under Louisiana law, "uninsured motor vehicle" carries a much broader meaning than it does under Michigan law, as Louisiana's UM law defines "uninsured motor vehicle" to include any "insured motor vehicle when the automobile liability insurance

---

[9]Michigan law previously required that motor vehicle liability policies provide uninsured motorist coverage. *Jarrell*, 308 N.W. 2d at 200. However, the law was repealed in 1973. *Id.*

6

coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident...." La. Rev. Stat. Ann. § 22:1295(2)(b).

In light of the differing definitions of "uninsured motor vehicle," there is a true conflict between Michigan and Louisiana UM laws. Under Michigan law, a vehicle is not deemed uninsured, and UM coverage would not be applicable, if the tortfeasor's vehicle is insured up to at least $20,000 for bodily injury to one person in any one accident and up to at least $40,000 for bodily injury to two or more persons in any one accident.[10] However, under Louisiana law, UM coverage is available as long as the tortfeasor's vehicle lacks sufficient liability insurance to cover the victim's damages. Accordingly, the Court must conduct a choice-of-law analysis in accordance with the Civil Code.

### B. Balance of State Contacts

Louisiana Civil Code article 3515 provides the general choice-of-law rule that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be

---

[10]The State Farm policy also defines uninsured motor vehicle to mean a motor vehicle or motorcycle that is not insured for bodily injury liability or one that is insured but "the limits are less than required by the financial responsibility act of Michigan." Rec. Doc. No. 24-3, p. 19. The Financial Responsibility Act provides that a motor vehicle liability policy "[s]hall insure the person named therein...as follows: $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person, $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and $10,000.00 because of injury to or destruction of property of others in any 1 accident." Mich. Comp. Laws Ann. § 257.520(b)(2).

7

most seriously impaired if its laws were not applied to that issue." La. Civ. Code Ann. art. 3515.[11] The same principle applies to choice-of-law determinations with respect to contractual obligations such as insurance policies. La. Civ. Code Ann. art. 3537. Article 3537 further defines the analysis, providing:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of :(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code. Ann. art. 3537.

In *Champagne*, the Louisiana Supreme Court considered whether to apply Mississippi or Louisiana law to a UM policy issued in Mississippi to a Mississippi resident injured in Louisiana. 893 So. 2d at 774. The court recognized that Mississippi law conflicts with Louisiana policy in that it offsets a UM carrier's liability based

---

[11] The rule further provides that such a determination should take into account the strength and pertinence of the state policies in light of "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

on the amount collected from the tortfeasor's liability insurer. *Id.* at 776, 788. The court considered these competing policies in light of various factors: that the plaintiff was a Mississippi resident, Mississippi was the place of negotiation and formation of the insurance policy, the insured vehicle was registered and "garaged" in Mississippi, the UM policy was a Mississippi contract, the defendant was a resident of Louisiana, and the defendant's insurance policy was issued in Louisiana. *Id.* at 788-89. The court held that Mississippi has "a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured transitorily within the borders of Louisiana." *Id.* at 789.

State Farm contends that in accordance with the Louisiana Supreme Court's balancing analysis in *Champagne,* the Court should apply Michigan law to this case even though the accident occurred in Louisiana. According to State Farm, Fiorillo's policy was issued to him and his wife in Michigan, the motorcycle was registered in Michigan, and Fiorillo's driver's license, which was in effect at the time of the accident, was issued by the State of Michigan.

Fiorillo argues that he has been a resident of Louisiana since January, 2006, and that his Louisiana residence is "the most important factor" of the balancing test.[12] In support of his

---

[12] Rec. Doc. No. 33-2, p. 11.

9

argument, Fiorillo declares in an affidavit that he has lived and worked in Louisiana since January, 2006, including at the time of the accident, that he filed Louisiana tax returns for the years 2006 and 2007, that his motorcycle has been garaged in Louisiana since January, 2006, and that he intends to remain in Louisiana indefinitely.[13] In his complaint, Fiorillo alleges that he is a domiciliary of Louisiana.[14] Fiorillo also states in his affidavit that all of the medical treatment that he received for his injuries from the accident occurred in Louisiana.[15]

Notwithstanding evidence that Fiorillo has lived and worked in Louisiana since 2006 and that he intends to remain in Louisiana indefinitely,[16] it is not entirely clear whether Louisiana is Fiorillo's "place of domicile [or] habitual residence" as set forth in Louisiana Civil Code article 3537. Fiorillo still has a Michigan driver's license[17] despite a Louisiana law requiring that anyone living in Louisiana beyond ninety days obtain a Louisiana driver's license,[18] the motorcycle remains registered in Michigan,[19] he has

---

[13] Rec. Doc. No. 33-6, paras. 2,3,4,7,8,13-16.

[14] Rec. Doc. No. 33-5, p. 1.

[15] Rec. Doc. No. 33-6, para. 10.

[16] Rec. Doc. No. 33-6, paras. 4,6, 13-15.

[17] *Id.* at para. 9.

[18] Louisiana Revised Statute § 32:404 provides:
> A nonresident or nonresident minor, who has been licensed to drive or operate a motor vehicle under the laws of his home state and who has in his immediate possession a valid license issued to him by his home state, shall be permitted

10

maintained his membership in a local electricians' union in Michigan,[20] and he remains legally married to his wife, Rhonda Fiorillo, who resides in Michigan.[21]

Even if the Court was to assume that Fiorillo is a resident of Louisiana as he argues, the fact of his Louisiana residence alone "is not determinative." *See Abraham*, 465 F.3d at 613 ("While we agree that [plaintiff's] "residence is a factor to be considered in making the choice-of-law determination, it is not determinative."); *Boutte v. Fireman's Fund County Mut. Ins. Co.*, 930 So. 2d 305, 319 (La. Ct. App. 3d Cir. 2006)("As we previously indicated, while not determinative, the residence of the injured plaintiff is pertinent and is a factor in determining choice-of-law issues."). Instead, in accordance with *Champagne*, the Court must consider factors in addition to Fiorillo's residence and the location of the accident, such as the place where the contract was negotiated and formed. *Champagne*, 893 So. 2d at 774, 781, 789 ("[A] choice-of-law analysis, as codified in La. C.C. arts. 3515 and 3537...is the appropriate methodology for determining which state's law applies to the interpretation of UM contracts in multistate cases such as

---

           to drive a motor vehicle in this state without examination
           or license for a period not to exceed ninety days.

[19]Rec. Doc. No. 33-6, para. 1.

[20]Rec. Doc. No. 39-2, p. 6.

[21]Rec. Doc. No. 33-6, para. 6. Fiorillo states in his affidavit that he moved to Louisiana when he and his wife separated in 2006. *Id.* at para. 5.

the present one, even when the accident occurs in Louisiana and involves a Louisiana resident.").

It is undisputed that the State Farm policy insuring the motorcycle was issued and delivered in Michigan. Following Fiorillo's move to Louisiana in January, 2006, the policy was renewed while Fiorillo's wife still lived in Michigan.[22] The motorcycle's title remained in his wife's name.[23]

However, when Fiorillo moved to Louisiana on January 10, 2006, he took the motorcycle with him and the motorcycle has been garaged in Louisiana since January 10, 2006.[24] Notwithstanding, the policy was renewed in February, 2006, and it identifies Michael and Rhonda Fiorillo of Garden City, Michigan as the insureds.[25] There is no indication that State Farm had any notice that Fiorillo had moved to Louisiana or that the insured motorcycle had been garaged in Louisiana since plaintiff's move.

Louisiana's First Circuit Court of Appeals refused to apply Louisiana law in similar circumstances, where the plaintiff failed to advise his insurer of his change of address. *Riley v. Budden*,

---

[22]Rec. Doc. No. 33-6, paras. 5,6, 11, 12. The policy lists both Fiorillo and his wife as insureds. Fiorillo is still married to his wife, who is a Michigan resident. *Id.* at paras. 5, 6. Fiorillo, however, garaged the insured motorcycle in Louisiana when the policy was renewed with the Michigan address. *Id.* at para. 8.

[23]Rec. Doc. No. 24-5; Rec. Doc. No. 33-6, para. 1.

[24]Rec. Doc. No. 33-6, paras. 4, 8.

[25]Rec. Doc. No. 24-3, p. 2.

No. 05-1752, 2007 WL 466754 (La. Ct. App. 1st Cir. Feb. 14, 2007). Like Fiorillo, the plaintiff maintained his Wisconsin driver's license and his Wisconsin vehicle registration even though he lived exclusively in Louisiana. *Id.* at *5. The plaintiff in *Riley* admitted that he determined that Wisconsin insurance rates were cheaper than Louisiana rates, that he received his premium notices at his sister's post office box in Wisconsin and that he never advised his UM carrier that he had changed his address. *Id.* Despite the location of the accident in Louisiana and the plaintiff's residence in Louisiana, the court found that Wisconsin had a more substantial interest and that the plaintiff's efforts to obtain lower insurance rates did "not militate in favor of the application of Louisiana law." *Id.* at *6.[26]

In the instant case, it is unclear whether Fiorillo's insurance premium would have increased had he notified State Farm of his change of address or the motorcycle's new location. However, it is apparent that State Farm based the policy premium for UM coverage on Michigan law.[27] As in *Riley*, the policy indicates that

---

[26]Even if the policy was issued in Michigan solely to Rhonda Fiorillo, a Michigan resident, and Fiorillo, a Louisiana resident, was injured while operating Rhonda Fiorillo's motorcycle in Louisiana, the result would not change. In *Palm v. Stewart*, Louisiana's Third Circuit Court of Appeals considered a scenario where the injured party was a Louisiana resident, the accident occurred in Louisiana, but the insurance policy was issued in Texas to a Texas resident. 858 So. 2d 790, 792, 794 (La. Ct. App. 3d Cir. 2003). The court held that Texas' interest is regulating such policies would be "more seriously impaired by the application of Louisiana law." *Id.* at 795.

[27]As discussed above, the policy defines "Uninsured Motor Vehicle" in accordance with Michigan law. Rec. Doc. No. 24-3, p. 19.

13

State Farm based the premium upon information provided by the insureds, including the location where the motorcycle was primarily garaged, and it was the insureds' responsibility to notify State Farm if any information was incorrect or had changed.[28] Given Fiorillo's own statements that he moved to Louisiana on January 10, 2006 and that the motorcycle had been garaged in Louisiana since January 10, 2006, Fiorillo should have informed State Farm of the new location of the motorcycle when the policy was renewed in February, 2006.

Fiorillo's decision to maintain his Michigan address on the policy, even after he moved with the insured motorcycle to Louisiana, indicates the parties' reasonable expectations that Michigan law would govern the insurance contract. Under these circumstances, it is difficult for the Court to conclude that Fiorillo reasonably expected that he would be protected by Louisiana's policy of promoting full recovery for accident victims.

---

[28]The policy states:
>The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions regarding the following:
>(1) *Your* car, or its use, including annual mileage;
>(2) The *persons* who regularly drive *your car*, including newly licensed family members; or
>(3) The location where *your car* is primarily garaged...
>This provision (5.d.) does not waive *our* right to rescind or reform this policy from its inception where this policy was procured through *your* misrepresentation of a material fact in the application for this insurance.

Rec. Doc. No. 24-4, p. 15.

As such, Michigan's interest in ensuring the uniform application of its laws governing insurance contracts is substantial and most likely to be seriously impaired if Michigan law is not applied. Louisiana law, if applied, would effectively abrogate the Michigan insurance contract.

Accordingly, the Court applies Michigan law to the UM policy issued by State Farm. Because Schmit's motor vehicle is insured beyond the requirements of Michigan law, it does not qualify as an uninsured motor vehicle under Michigan law and Fiorillo is not entitled to compensation from his UM carrier, State Farm.[29]

Accordingly,

**IT IS ORDERED** that State Farm's motion for summary judgment is **GRANTED** and that Fiorillo's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Fiorillo's claims against State Farm are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, April 21st, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[29] The Court notes that the application of Michigan law will not necessarily leave Fiorillo without redress for his injuries as he may be able to recover up to $50,000 under Schmit's policy.